IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 07-0765 |
| A.G. CULLEN CONSTRUCTION, INC., ARLENE CULLEN, PAUL CULLEN, and COUNTY OF BUTLER, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

## I.    Introduction

Underlying the instant matter, Plaintiff Travelers Casualty and Surety Company of America (hereinafter "Plaintiff" or "Travelers") is the surety on two bonds for performance and payment[1] issued to Defendants A.G. Cullen Construction, Inc., and Arlene Cullen and Paul Cullen (hereinafter "the Cullen Defendants" or "the Cullens"), in connection with a general construction contract between the Cullen Defendants and Defendant County of Butler (hereinafter "Defendant County" or "Butler").  (Docket No. 50, at 2-3, ¶¶11-12).  The subject bonds cover a construction project for

---

[1]
Under Pennsylvania's Public Works Contractors' Bond Law, 8 P.S. § 191, *et. seq.*, a contracting body may not be awarded a construction contract for any public works project exceeding five thousand dollars ($5,000.00) unless they first furnish performance and payment bonds.  8 P.S. § 193(a).  Upon the award of contract, the bonds become binding on all parties.  *Id.*  A performance bond, common in the surety industry, is solely for the protection of the contracting body and obligates the surety either to arrange for completion of the project or to make its financial resources available to ensure completion up to the penal sum of the bond.  8 P.S. § 193(a)(1); Construction Litigation 389 (Kenneth M. Cushman, et al. eds., 2d ed. 1993).  A payment bond obligates a surety to pay certain subcontractors and suppliers for work performed if the contractor fails to pay them.  8 P.S. § 193(a)(2);  Construction Litigation 389 (Kenneth M. Cushman, et al. eds., 2d ed. 1993).

the Butler County Prison (hereinafter "Butler Project"), to which the Cullens contracted to be the general contractor. (*Id.* at 6, ¶¶ 20-21). Relevant to the underlying bonds and the contract between Butler and the Cullens, Plaintiff filed suit against the Cullen Defendants for breach of contract (Count I), common law indemnification and exoneration (Count II), contractual indemnification (Count III), exoneration (Count IV) and a demand for collateral (Count V). (Docket No. 50 at 10-15). Plaintiff has also brought claims against Butler for equitable subrogation (Count VI) and assignment (Count VII). (Docket No. 50 at 17-18). In response to Travelers' claims, the Cullen Defendants asserted cross-claims against Defendant County for breach of contract (Count I), violations of the Pennsylvania Procurement Code, 62 Pa. C.S. § 101, *et. seq.* (Count II), and tortious interference with contract (Count III). (Docket No. 57 at 27, 46, 50). This matter is currently before the Court on Defendant County's motions to dismiss filed on July 21, 2008. (Docket Nos. 62 and 64). Based on the following, the Court DENIES Defendant County's Motion to Dismiss Counts VI and VII (Docket No. 62) of Plaintiff's Amended Complaint (Docket No. 50), and GRANTS in part and DENIES in part Defendant County's Motion to Dismiss (Docket No. 64) the Cullen Defendants' cross-claims (Docket No. 57).

## II.    Factual Background

At the request of the Cullen Defendants, Plaintiff, a company engaged in the surety bond business, issued two separate bonds for performance and payment to the Cullens for various constructions projects, one including the Butler Project.[2] (Docket No. 50 at 2, ¶¶ 9-11). In consideration of these bonds, the parties entered into a General Agreement of Indemnity ("GAI").

---

[2]

Both bonds for the Prison Project were issued under Bond No. 104655062. The contract amount for this project was $21,932,000. (Docket No. 50 at 3 § 1;1 Docket No. 50-2 at 5).

(*Id.* at 3-4, ¶¶ 12-15, Docket No. 50-3). Arlene Cullen and Paul Cullen are the individual indemnitors under the terms of the bonds and the GAI, while A.G. Cullen Construction, Inc. stands as both Travelers' principal and indemnitor. (Docket No. 50 at 6, ¶ 19; *see also* Docket Nos. 50-1, 50-2, and 50-3).

According to the terms of the GAI, Travelers, as the surety, possesses rights to funds received in connection with the construction contract and has the right to demand that any contract funds owed to Travelers be held in a trust. (Docket No. 50 at 4, ¶ 14; Docket No. 50-4 at 3, § 9). That is, a trust fund was to be established by the Cullens, for the benefit of Travelers, to hold funds received from Butler or due to subcontractors and suppliers in connection with the construction of the Butler Project. (*Id.*). The agreement further states that Travelers may open a trust account to hold such funds and that the Cullens shall deposit funds received upon a demand made by Travelers. (*Id.*). Additionally, it provides that Travelers has a security interest in all contract rights, accounts, rights of payment, and general intangibles of the Cullens. (Docket No. 50 at 4, ¶ 15;Docket No. 50-4 at 3, §12). The Cullens also agreed that, upon a demand made by Travelers, they would deposit additional sufficient funds to compensate Travelers for any loss suffered due to a default under the agreement. (Docket No. 50 at 5, ¶ 17; Docket No. 50-4 at 3, § 5). Relevant here, the agreement included in its definition of default, *inter alia*, an actual breach or abandonment of any contract.[3] (Docket No. 50 at 5, ¶ 18; Docket No. 50-4 at 2, § 1).

On January 25, 2006, Defendant County and the Cullen Defendants entered into an

---

[3]
    The definition of a default, as defined in the GAI, includes a default through a declaration of a contract default by an obligee, a breach of any provision of the agreement, and failure to make payments of a properly due and owing bill in connection with any contract. (Docket No. 50-4 at 2, § 1). The GAI defines an obligee as any person or entity in whose favor a bond has been issued, and that person's or entity's successors and assigns. (*Id.*).

agreement for the construction of the Prison Project (hereinafter the "Construction Contract") (Docket No. 50 at 6, ¶ 22; Docket No. 50-5). According to the Construction Contract, the Cullen Defendants were to serve as the general contractor for the Butler Project. (Docket No. 57 at 23, ¶ 5).

In the spring of 2007, after construction began, the Cullens served Butler with several notices demanding payment, and threatened to walk off the Project if they were not paid within seven days. (Docket No. 57 at 38-39, ¶¶ 124-131). In response, Butler threatened to find the Cullens in default of the contract and file a claim against the performance bond. (Docket No. 50-8 at 3). After said claim was filed against the performance bond, Travelers filed suit in this Court against the Cullens on June 6, 2007, claiming, *inter alia*, that the Cullens refused to deposit funds in a trust account in violation of the GAI. (Docket No. 1). The parties attempted to mediate their claims before a neutral approved by this Court, the Honorable Joseph Del Sole, on August 27, 2007. (Docket No. 44; Docket No. 50 at 6, ¶ 24). Consequently, they reached an agreement regarding the day to day operation and procedures of the trust fund account. Specifically, the parties agreed that all funds relating to the Butler Project would be deposited into the account, and any withdrawal by the Cullens was prohibited unless it was with the written consent of Travelers. (*Id.*). In accordance with the agreed upon procedures regarding the account, Travelers used the deposited funds to make payments to subcontractors and suppliers on the Butler Project, in addition to releasing funds to the Cullens to pay its own employees and expenses. (*Id.* at 7, ¶ 25).

Thereafter, in December of 2007, the Cullens claimed that payment on the Butler Project was overdue and declared Butler to be in material breach of the Construction Contract for nonpayment. (*Id.* at 7, ¶ 26). The Cullens terminated the contract and future performance on the project was

discharged. (*Id.*) In response, on or about January 17, 2008, Butler claimed that the Cullens were in breach for failure to continue work and terminated the contract. (*Id.* at 7, ¶ 27; *see also* Docket No. 50-7). By letter dated the same day, Butler declared the Cullens to be in default and made a demand upon Travelers to perform its duties under the performance bond. (*Id.* at 7, ¶ 28; *see also* Docket No. 50-7). Travelers then notified the Cullens that, pursuant to the indemnification obligation in the GAI, it was necessary for the Cullens to deposit funds in the trust account in an amount Travelers estimated would be sufficient to protect Travelers from any losses, including any expenses associated with Travelers' investigation of the allegations made by Butler against the Cullens. (*Id.* at 7, ¶ 29; Docket No. 50-8 at 2-3). Travelers demanded that the Cullens deposit $1 million in the account, an estimate derived from Butler's payment bond claims to Travelers which totaled in excess of $800,000. (Docket No. 50-8 at 3). Travelers claims that the Cullens have not deposited any of these funds. (*Id.* at 7, ¶ 30).

Plaintiff conducted an independent investigation of the Butler Project, including allegations of performance defaults made by Butler against the Cullens, and the Cullens' allegations of payment defaults against Butler. (*Id.* at 8, ¶ 31, 32-33). However, Travelers was unable to determine who was the breaching party. (*Id.* at 9, ¶ 34). Hence, in accordance with the performance bond, Travelers tendered a completion contractor to Butler. (*Id.*). Travelers claims to have received requests under the payment bond for payments in excess of $2.7 million dollars from several subcontractors and for material and supplies on the Butler Project. (*Id.* at 9, ¶ 35).

Against this backdrop, Travelers filed its Amended Complaint (Docket No. 50) seeking recovery from the Cullens for alleged losses in the form of compensatory damages, expenses, and interest for breach of contract, common law indemnification, contractual indemnification,

exoneration. (Docket No. 50 at 10, ¶ 36). Travelers further seeks recovery from Butler County for equitable subrogation and assignment. (Docket No. 50 at 17-20). Travelers claims that it will continue to incur losses in connection with its tender of a completion contractor under the performance bond and in connection with making payments to labor and material suppliers pursuant to the payment bond. (*Id.* at 10, ¶ 37).

## III. Procedural History

On August 1, 2007, the Court denied Travelers' Motion for Temporary Restraining Order and Motion for Preliminary Injunction. (Docket No. 40). Travelers' motions requested that the Court order the Cullens to deposit funds received in connection with the Butler Project into the trust account, in adherence with the GAI, and to prohibit any withdrawals from the trust account without the express consent of Travelers.[4] (Docket No. 5). On September 27, 2007, upon agreement of the parties, the Court stayed the case for a period ending May 1, 2008. (Docket Nos. 47 and 48). Accordingly, on May 1, 2008, Travelers filed its Amended Complaint against the Cullen Defendants and Butler County. (Docket No. 50). Therein, Travelers pled claims against the Cullens for breach of contract, indemnification, and exoneration along with a demand for collateral. (Docket No. 50). Included therewith are Travelers' claims against Butler for equitable subrogation and assignment. (Docket No. 5). On June 5, 2008, the Cullens filed their Answer to Travelers' Amended Complaint along with Cross-Claims against Butler for breach of contract, tortious interference and violations of the Commonwealth's Procurement Code. (Docket No. 57).

---

[4]

Thereafter, as discussed above, on August 27, 2007, the parties engaged in mediation before the Honorable Joseph Del Sole to establish the parameters for the operation and management of the trust fund account. The issues surrounding the trust account's operation were resolved; however, the case did not settle in its entirety. (Docket No. 44).

On July 21, 2008, Butler filed a Motion to Dismiss Travelers' claims for equitable subrogation and assignment, contained in Counts VI and VII of Plaintiff's Amended Complaint, respectively, and a Motion to Dismiss the Cullen Defendants' cross-claims. (Docket Nos. 62 and 64, respectively). In said motions, Butler argues that Travelers' claims fail because they acted as a "volunteer," therefore, its claims fail and are unripe for review. (Docket No. 62 at 2-4). Butler also argues that the Cullens' claims fail because they are insufficiently pled and, additionally, that this Court lacks jurisdiction over those claims. (Docket No. 65 at 14-15, 19). Both the Cullen Defendants and Travelers filed their opposition to Butler's motions on August 11, 2008. (Docket Nos. 68-70).

A status conference was held on August 22, 2008, wherein Butler requested oral argument on the motions.[5] (Docket No. 74). On August 26, 2008, the Court heard oral argument on Butler's motions to dismiss.[6] (Docket No. 75). As the motions to dismiss have been fully briefed, they are now ripe for disposition.[7]

## IV. Standard of Review

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, – U.S.–, 127

---

[5]

During said conference, the Court discussed the status of the case with regard to four (4) other pending and related state cases filed in the Butler County Court of Common Pleas, the progress of construction, and the possibility of resolving the case through the Court's ADR process.

[6]

In consideration of the instant motions, the Court reviewed the transcript of the oral arguments. (Docket No. 75; herein referred to as *Transcript of Oral Argument* held on August 26, 2008 ("*Arg't. Trans.*")).

[7]

On September 22, 2008, the parties filed a joint status report. (Docket No. 76). In said report, the parties reported that mediation would prove useful and that the parties would like the instant Court to serve as a mediator. (Docket No. 76). The parties further indicated that they would attempt to identify a single individual to serve as the Court's co-mediator on or before October 13, 2008. (*Id.*). Thereafter, on October 17, 2008, the parties chose John Madden, Esq. to serve as the Court's co-mediator and Mr. Madden accepted the appointment. (*See* Docket No. 81). The Court and Mr. Madden will conduct a joint mediation beginning on November 19, 2008.

S.Ct. 1955 (2007), a complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)  if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)(quoting *Twombly*, 127 S.Ct. at 1974).   While *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), allowed dismissal of a claim only if "no set of facts" could support it, under *Twombly,* a claim for relief 12(b)(6)) now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 127 S.Ct. at 1965.   In order to satisfy the requirement of FED. R. CIV. P. 8(a)(2) that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations in order "to raise a right to relief above the speculative level." *Ayers v. Osram Slyvania, Inc.*, Civil Action No. 07-1780, 2008 U.S. Dist. LEXIS 72644, at *6 (M.D. Pa. Sept. 24, 2008) (citing *Twombly*, 127 S.Ct. at 1965).

In considering a Rule 12(b)(6) motion, a court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party.  *Umland v. Planco Fin. Servs.*, Civil Action No. 06-4688, 2008 U.S. App. LEXIS 19225, at *10 (3d Cir. Sept. 9, 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).  However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 215 (3d Cir.2002); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 n. 8 (3d Cir.1997).  A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations.  *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).  The failure-to-state-a-claim standard of Rule 12(b)(6) seeks to promote judicial economy by eliminating unwarranted discovery and factfinding.  *United States ex. rel. Repko v. Guthrie Clinic,*

*P.C.*, 557 F.Supp.2d 522, 525 (M.D. Pa. 2008).   Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory.   *See Wilkerson v. New Media Tech. Charter Sch.,* Inc., 522 F.3d 315 (3d Cir. 2008) (citing *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008); citing *Twombly*, 127 S.Ct. at 1965). Generally, this does not impose a heightened burden on the claimant above that already required by Rule 8, but instead calls for fair notice of the factual basis of a claim while "rais[ing] a reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, Civil Action No. 08-411, 2008 U.S. Dist. LEXIS 57988, at * 7 (W.D. Pa. July 30, 2008) (citing *Phillips*, 515 F.3d at 234; and *Twombly*, 127 S.Ct. at 1964-65).

## V.      Discussion

A federal court sitting in diversity must apply the substantive law as decided by Pennsylvania's highest court.  *Travelers Indem. Co. of Illinois v. DiBartolo*, 131 F.3d 343, 348 (3d Cir. 1997) (citations omitted).  The Court notes that the parties do not dispute the application of Pennsylvania law to this matter.  Thus, the Court need not engage in a choice of law analysis. Accordingly, Pennsylvania law will be applied.

### A.      Defendant County's Motion to Dismiss Counts VI and VII of Plaintiff's Amended Complaint

Defendant County argues that Plaintiff's claims for equitable subrogation and assignment, contained in Counts VI and VII, should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (*See* Docket Nos. 62 and 63).  Specifically, Butler argues that Travelers' claims for equitable subrogation and assignment fail because Travelers acted as a

"volunteer" and thus, cannot at this time maintain a subrogation or assignment claim.[8] (Docket No. 62 at 2; *Trans.* at 6: 15-17). Butler also argues that these claims are not yet ripe. (Docket No. 62 at 4). Additionally, Butler argues that Plaintiff's claim for punitive damages in both counts fails because such damages are not available in subrogation or assignment cases. (Docket No. 62 at 2; Docket No 63 at 2; *Transcript of Oral Argument* held on August 26, 2008 ("*Arg't. Trans.*") at 6: 4-6). The Court will first address Butler's ripeness argument as this issue is dispositive of Travelers' claims without regard to whether the claims are valid under Rule 12(b)(6).

1.    *Plaintiff's Claims for Equitable Subrogation and Assignment*

a.    Ripeness

Butler argues that the issues of subrogation and assignment are not yet ripe because neither Plaintiff nor any court has made a determination as to whether the Cullen Defendants have, in fact, defaulted on the Butler Project. (Docket No. 62 at 4; *Trans.* at p. 8, ll. 1-2). Thus, Butler argues that until the issue of default has been determined, any subrogation and/or claim assignment against it is premature. (Docket No. 62 at 4-5). In response, Travelers contends that because it has already paid significant monies in connection with the Butler Project, the issues are now ripe. (Docket No. 70 at 10; *Trans.* at 15:1-5).

In order for an equitable subrogation claim on a payment or performance bond to be ripe under Pennsylvania law, one of the following must have occurred: (1) the surety has made payments

---

[8] The doctrine of assignment is a particular application of the broader principle of equitable subrogation. *Greater New York Mut. Ins. v. North River Ins.Co.*, 85 F.3d 1088, 1094-95 (3d Cir. 1996). An assignment acts to transfer to another, one party's rights to payment and/or duty to pay. *Cinicola v. Scharffenberger*, 248 F.3d 110, 124 n.15 (3d Cir. 2001). Within that transfer, subrogation acts to place the ultimate duty to pay upon the party who, in the interest of fairness, should bear it. *Sch. Dist. of Borough of Aliquippa v. Maryland Cas. Co.*, 527 A.2d 765, 769 (Pa. Super. 1991). Here, Travelers claims to have been assigned to the rights of the Cullens pursuant to the GAI, therefore, it also claims that it is equitably subrogated to the position of the Cullens. Because equitable subrogation is a derivative of an assignment, the Court will analyze both claims against Butler, together.

on obligations of the principal; (2) the funds remained in the hands of the obligee on the bond; or (3) the funds have been paid out of the hands of obligee, or the owner, at a time immediately after the surety has attached as a result of having made payments on behalf of the principal. *Jacobs v. NE Corp.*, 416 Pa. 417 (Pa. 1965); *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132 (1962). Furthermore, Pennsylvania law holds that when a surety has paid the claims of labor and material suppliers under a payment bond, it may assert the benefits of subrogation against the sum retained by the public agency that contracted for the work. *Ram Construction Co. v. American States Ins. Co.*, 749 F.2d 1049, 1054 (3d Cir. 1984).

Here, Travelers has pled that it made numerous payments on the Cullens' obligations (*see* Docket No. 50 at 7, ¶25; Docket No. 69 at 9; Docket No. 70 at 11). Specifically, Travelers claims that it has approved payments to various subcontractors and suppliers on the Butler Project. (Docket No. 50 at 7, ¶25). Travelers also states that it has received claims under the payment bond for further payments totaling amounts in excess of $2.7 million. (*Id.* at 9-10, ¶ 35). Accordingly, based on the above referenced principles, Travelers' claims for equitable subrogation and assignment are now sufficiently ripe as they claim to have paid funds owed by the Cullens to subcontractors and suppliers. *Ram Construction Co.*, 749 F.2d at 1054.

b.    "Voluntary" Nature of Plaintiff's Actions

The doctrine of equitable subrogation requires that when one pays the debt of another, under circumstances where the other would be unjustly enriched, the former is entitled to be placed in the position of the other. *Tudor Development Group, Inc. v. United States Fidelity & Guaranty Co.*, 968 F.2d 357, 362 (3d Cir. 1992). In order for the doctrine to apply, a claimant must show that: (1) payment was made to the creditor in order to protect his own interests; (2) the claimant did not act

as a volunteer; (3) the claimant was not primarily liable for the debt; and (4) that applying the doctrine will not cause injustice to the rights of others. *E.P. Bender Coal Company v. Chubb Group of Insurance Companies*, 2006 WL 2547045 (W.D. Pa. 2006) (citing *First Commonwealth Bank v. Heller*, 863 A.2d 1153, 1158 (Pa. Super. 2004)); *see also Tudor* 968 F.2d at 362. Butler argues that equitable subrogation and assignment do not apply because Plaintiff's actions were voluntary. (Docket No. 62 at 3). However, based on the following, the Court finds these arguments unpersuasive.

Under both payment and performance bonds, the surety "mitigates loss by its performance, and pays the subcontractors and suppliers" *First Indem. of Am. Ins. Co. v. Modular Structures*, 27 F.3d 72, 74 n.1 (3d Cir. 1994) (citations omitted). In doing so, the surety "'stands in the shoes' of other parties to the construction project through use of the equitable doctrine of subrogation." *Modular*, 27 F.3d at 74 n.1. Subrogation has long been recognized as an "equitable remedy" whereby a party that is secondarily liable and who has paid the debt of the subrogor, takes the place of the subrogor, thereby succeeding to their rights and remedies. *Bill Gray Enters v. Gourley*, 248 F.3d 206, 222 (3d Cir. 2001)(citations omitted). In other words, when a surety has the obligation to act under a performance or payment bond, and does act, satisfying the obligations of another, the surety assumes the position of the original party and may exercise all rights and remedies it possesses. *1313466 Ont., Inc. v. Carr*, 954 A.2d 1, 7-8 (Pa. Super. 2008); *see also Public Service Mut. Ins. Co. v. Kidder-Friedman*, 743 A.2d 485, 488 (Pa. Super. 1999) (recognizing the doctrine of equitable subrogation).

After Butler terminated the contract with the Cullens, it requested that Travelers, as the Cullens' surety, fulfill its obligations under the performance bond. (Docket No. 62 at 3). In response

to this request, Travelers investigated the dispute between Butler and the Cullens but was unable to

conclusively determine who was at fault. (*Id.*; Docket No. 63 at 3-4). Travelers, pursuant to the

terms of the performance bond, executed an agreement with Butler and obtained a new contractor

for the Butler Project, while reserving its rights pursuant to the two bonds and the GAI. (Docket No.

70 at 2-3). Based on these facts, Butler argues that Plaintiff "voluntarily placed itself in its current

position" and cannot subrogate and/or assign the matter at the present time. (Docket No. 62 at 3;

Docket No. 63 at 4; *Arg't. Trans.* at 7:4-6 - 8:1-2). Travelers, however, argues that it proceeded as

it did in order to mitigate damages and pursuant to a full reservation of its rights by pursuing one of

the available options set forth in paragraph 4.3 of the performance bond.[9] (Docket No. 70 at 5; *Arg't.

Trans.* at 14:11-17 - 15:1-5). Travelers further points out that Butler recognized that Travelers was

responding as a surety under the bond and not as a volunteer. (*See* Docket No. 70 at 5 (citing Docket

---

[9]

      Paragraph 4.3 of the Performance Bond provides that when a surety's obligation under the bond arises under paragraph 3 of the bond, it may take the following action to:

> Obtain bids or negotiate proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in the excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default.

(Docket No. 50-3 at 4). In addition, Paragraph 5 of the Performance Bond provides that:

> If the surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after the receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the surety proceeds as provided in Subparagraph 4.4 and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

(Docket No. 50-3 at 3).

No. 70-3); *see also* letter dated May 7, 2008 from Chad Wissinger, Esq. contending that Travelers was not responding promptly *as required* by the performance bond (Docket No. 70-2 at 3-4.)).

Given these facts, there is no indication Plaintiff acted as a "volunteer." Rather, Plaintiff was fulfilling its duties as the surety by tendering a new contractor to Butler in accordance with the performance bond (*see* Docket No. 50-3 at 2, ¶ 4.1)(the surety may undertake to perform the construction contract through independent contractors), and by continuing payment to the subcontractors under the payment bond (*see* Docket No.50-3 at 6, ¶ 6.1)(once the obligation to pay arises under the bond, the surety shall pay or arrange for payment of undisputed amounts). Because Travelers was acting in response to claims made by Butler against the bonds, and pursuant to its obligations under the bonds, it may pursue its rights with regard to same. *See Carr*, 954 A.2d at 7-8 (upon payment of another's debt, a surety assumes the position of the original party with regards to rights and remedies). Accordingly, the Court denies Defendant County's motion to dismiss Plaintiff's claims for equitable subrogation and assignment on the basis that Plaintiff acted as a "volunteer."

2. *Plaintiff's Claim for Punitive Damages*

Next, Butler argues that Travelers' claims for punitive damages are inappropriate because punitive damages are not available in subrogation and assignment cases. (Docket No. 62 at 2; *Arg't. Trans.* 6: 4-6). To the contrary, Travelers argues that recovery for punitive damages would be appropriate if the Cullens were entitled to recover punitive damages from Butler. (Docket No. 69 at 10; Docket No. 70 at 11).

The Cullens, Travelers' principal, have asserted various claims again Butler in state court and in the present litigation seeking both compensatory punitive damages. (*See* Docket No. 57 at 53;

Docket No. 69 at 10). The Cullens may be entitled to punitive damages for their alleged harm if their state tort claims are found to be valid.[10] *See W.A. Wright, Inc. v. KDI Sylvan Pools, Inc.*, 746 F.2d 215, 217 (3d Cir. 1984) (punitive damages may be recoverable for a breach of contract claim, if the breach is also for a tort for which punitive damages are recoverable). Additionally, the United States Court of Appeals for the Third Circuit has held that a surety is entitled to stand in the shoes of its principal to a construction project insofar as there are monies due it. *In re Modular Structures, Inc.*, 27 F.3d 72, 74 (3d Cir. 1994). Thus, if the Cullens recover punitive damages from Butler based on its state court claims, as well as its federal claims, Travelers may be entitled to those monies under the doctrine of equitable subrogation. Therefore, the Courts find that Plaintiff's claim for punitive damages is proper at this stage of the litigation. Accordingly, Butler's motion to dismiss Plaintiff's claim for punitive damages is denied.

### B.     Defendant Butler County's Motion to Dismiss Cullen Defendants' Cross-Claims

Butler has also moved to dismiss the Cullen Defendants' three (3) cross-claims. These claims include breach of contract, violation of the Commonwealth Procurement Code 62 Pa. C.S. § 101, *et. seq.*, and tortious interference with contract, which constitute Counts I through III, respectively, of the Cullen Defendants' cross-claims. (Docket No. 57 at 10 - 53). Butler argues that these claims fail as a matter law because they are not sufficiently pled as required by Fed. R. Civ.

---

[10]

In state court, the Cullens seek recovery for alleged breach of contract, violations of the Pennsylvania Procurement Code, 62 Pa. C.S. § 101, *et. seq.*, and tortious interference with contract. (Docket No. 78-2 at 1). The Cullens have raised the same type of claims here. In Pennsylvania, punitive damages may be awarded based upon clear and convincing proof of actual malice or bad faith. *Banas v. Matthews Int'l. Corp.*, 348 Pa. Super. 464, 489 (Pa. Super. 1985); *Klinger v. State Farm Mut. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997)

P. 12(b)(6). (Docket No. 65 at 14-15, 19).[11] Butler has also moved to dismiss these claims on the basis that this Court lacks supplemental jurisdiction over the Cullens' cross-claims under 28 U.S.C. § 1367(a) and FED. R. CIV. P. 13. (Docket No. 65 at 19).

### 1. Count I - Breach of Contract

Butler argues that the Cullen Defendants' breach of contract claim fails as a matter of law because the Cullens have not pled the required elements for a breach of contract under Pennsylvania law. (Docket No. 65 at 3). Butler specifically challenges the breach of contract claim on the following grounds: (1) the Cullens failed to establish what duties Butler owed and how those were breached; (2) the claims fail to identify the specific faulty or misleading plans, specifications, drawings and other contract documents of which complaint is made; (3) the claims fail to state what provisions of the contract Butler breached by causing delays and not installing certain utilities; and (4) the Cullens' claims for damages are not sufficiently pled. (Docket No. 65 at 7-14). The Court will address each of these four (4) arguments to the Cullens' contract claim in turn.

### a. Contractual Duties and Alleged Breaches

The crux of Butler's argument is that the Cullens' claim does not set forth the essential terms of the contract or the specific duties imposed by the contract that were allegedly breached. (Docket No. 65 at 3). In response, the Cullen Defendants argue that they have sufficiently pled a claim for breach of contract. (Docket No. 68). Specifically, they have pled that a contract was entered into

---

[11]

Prior to the initiation of the instant matter, the Cullen Defendants filed an action against Defendant Butler County in the Butler County Court of Common Pleas at AD No. 07-10692. After two rounds of preliminary objections, the Cullens filed a second amended complaint in the state court on or about February 13, 2008, which alleged claims for breach of contract, violation of the Procurement Code, and tortious interference. Butler filed a third set of preliminary objections, on which the state court ruled on August 28, 2008. Consequently, Butler filed a state court update with this Court on September 24, 2008, attaching thereto the state court's opinion regarding the third set of preliminary objections. (*See* Docket No. 78 and 78-2).

with Butler whereby the Cullens would serve as the general contractor for the construction of the Butler Project. (Docket No. 68 at 4; Docket No. 57 at 2-3, ¶¶ 5-10). Further, they claim that Butler breached its contractual duties based upon its failure to pay the Cullens for work properly performed pursuant to the construction contract and the Procurement Code, thereby violating the contract and causing damages in excess of $3.5 million dollars. (*See* Docket No. 57 at 38-39, ¶¶ 123-144).

In order to sufficiently plead a cause of action for breach of contract under Pennsylvania law, a claimant must aver the following: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages. *Pennsy Supply, Inc. v. American Ash Recycling Corp. of Pa.*, 895 A.2d 595, 600 (Pa. Super. 2006); *see also Hart v. Arnold*, 884 A.2d 316 (Pa. 2005). Under the Federal Rules of Civil Procedure, a claimant is only required to provide a short and plain statement of facts to support a plausible claim for relief. *Twombly*, 127 S.Ct. at 1965. Furthermore, a plaintiff must only aver enough facts to raise a right to relief above the speculative level. *Id.*

The Cullens have satisfied these requirements in pleading a cause of action for breach of contract. They pled that contract was entered into between the parties which Butler breached by failing to make payment for work performed, thereby causing the Cullens to lose money on the Butler Project. (*See* Docket No. 68 at 4; Docket No. 57 at 2-3 ¶¶ 5-10, 38-39 ¶¶ 123-144). Their claim sets forth numerous specific averments relating to Butler's failure to pay for work performed. (*See* Docket No. 57 at 27 ¶¶ 123-143). Specifically, they cite paragraph 30 of the Construction Contract, which provides the general conditions under which Butler has a duty to pay in a timely manner. (*See* Docket No. 57-2). The Cullens also cite numerous other contract provisions that Butler allegedly breached. (*See* Docket No. 68 at 5). They also claim that Butler failed to grant

extensions of time, failed to pay for work performed under change orders, improperly rejected change order requests, improperly stopped work, and failed to establish a schedule for contractors working on a contiguous part of the Butler Project, all of which they maintain are actionable under paragraphs 3, 3(a), 4, 26, 27, 28, and 29 of the Construction Contract's General Conditions.[12]  Read in the light most favorable to the Cullens, the Court finds that their claim is properly supported by the facts.  Furthermore, at this stage, the Court must accept all allegations in the cross-claim as true and need not resolve factual disputes.  *Buck*, 452 F.3d at 260.  Therefore, to the extent that Butler argues that it does not agree with the bases asserted for the alleged breaches, such arguments amount to a defense and, as such, are not a proper basis for dismissal.  *See* FED. R. CIV. P. 12.  Accordingly, Butler's argument that the Cullens have failed to sufficiently plead Butler's duties under, and breaches of, the contract fails.

### b.  Plans, Specifications, and Project Design

Butler also challenges the Cullens' claims for breach of contract relating to building plans, specifications, and project designs.  (Docket No. 65 at 8; *Arg't. Trans.* at p. 30, 10-18).  The County argues that the claim fails because the Cullens have not identified the specific plans or documents at issue, and the nature of alleged defects in those documents.  (*Id.*).

The Supreme Court has held that a claimant does not need to set out in detail the facts upon which he bases his claim.  *Twombly*, 127 S.Ct. at 1965 (a claim does not need detailed factual allegations).  Rather, a claimant need only give the other party fair notice of what the claim is and the grounds upon which it rests.  *Phillips*, 515 F.3d at 233 (citations omitted).  Additionally, Rule

---

12

A copy of these provisions, as contained in Exhibit A attached to the Cullens' cross-claims (Docket No. 57-2), is provided in the appendix to this opinion.

8 does not require a plaintiff to identify a specific contract provision at issue.  *Slim CD, Inc. v. Heartland Payment Sys.*, Civ. Action No. 06-2256, 2007 U.S. Dist. LEXIS 62536, at *21 (D.N.J. Aug. 24, 2007) (citing *In Re Tower Air, Inc.*, 416 F.3d 229, 237 (3d Cir. 2005)).

In their cross-claim, the Cullens have pled that Butler provided faulty, misleading, inaccurate and defective plans, specifications, and drawings. (*See* Docket No. 57 at 27, ¶¶ 34-35, at 30-31, ¶¶ 57, 60, at 33, ¶ 80 ).  Specifically, the Cullens claim that pursuant to paragraph 1 of the Construction Contract with Butler, the County was required to specify the work to be done in the plans and specifications and failed to do so.  (Docket No. 57 at 27, ¶¶ 34-35).  They further claim that they were forced to submit numerous requests for information as to the Butler Project's plans.  (*Id.* at 31, ¶60).  Rule 8 does not require that the Cullens describe and specifically cite each and every document that was misleading and/or inaccurate; rather, they must only set forth enough facts to support a plausible claim upon which relief can be granted.  *Twombly*, 127 S.Ct. at 1974.  Moreover, the Federal Rules of Civil Procedure do not require that a pleading provide evidence of a cause of action. *O'Boyle v. Braverman*, 2008 U.S. Dist. LEXIS 62180, at *14 (D.N.J. 2008) (citing *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977)).  Here, the Cullens' factual allegations regarding the plans and specifications, if true, could support a claim for breach of contract.  As such, the Cullens have provided Butler with the requisite level of notice as required by Rule 8, as interpreted by *Twombly* and *Phillips*.  Accordingly, Butler's motion to dismiss the Cullens' claim for breach of contract on these grounds is denied.

### c.  Delays, Utilities, Site Conditions and Weather

Butler argues that the Cullens' breach of contract claim fails because it does not sufficiently specify what contract provision was breached by Butler's failure to adequately deal with site

conditions and weather, and by failing to install utilities, thereby causing delays in the completion of the Butler Project. (Docket No. 65 at 10-12). As previously discussed, the Federal Rules of Civil Procedure do not require the level of specificity as argued by Butler. *See Slim CD*, 2007 U.S. Dist. LEXIS 62536, at *21 (citing *In Re Tower Air, Inc.*, 416 F.3d at 237)(the Federal Rules of Civil Procedure do not require a plaintiff to allege specific provisions violated in the contract). Rather, the Cullens' pleading must only give Butler fair notice of what the claim is and the grounds upon which it is based. *Twombly*, 127 S.Ct. at 1964-65. However, the Cullens do claim that Butler violated paragraph 28 of the Construction Contract's General Conditions by failing to correct unforeseen and concealed conditions on the Butler Project. (Docket No. 57 at 38, ¶¶ 117-122). Additionally, they claim that Butler violated paragraph 26 by failing to timely install utilities, thereby causing delays in work. (*Id.* at 40, ¶ 145). Accordingly, the Court finds that the facts pled in the Cullens' cross-claim are sufficient to state a cause of action for breach of contract based upon Butler's failure to install utilities, properly document site conditions, and prepare for any possible delays due to weather and changed site conditions. (*See* Docket No. 57 at ¶¶ 117-122, 145-166).

### d. Damages

Butler argues the Cullens' breach of contract claim must be dismissed because the Cullens' damages claim is not sufficiently specific pursuant to FED. R. CIV. P. 12(b)(6). (Docket No. 65 at 12-14). Federal Rule of Civil Procedure 8 does not require that a party sue for a specific amount of damages. *See* FED. R. CIV. P. 8(a)(3). Only those damages that qualify as "special" are required to be plead with specificity.[13] FED. R. CIV. P. 9(g). It is unclear whether the federal courts should

---

[13]
      Special damages are damages that are not reasonably foreseeable as naturally flowing from an alleged wrongful act, that is, they are damages "that are alleged to have been sustained in the circumstances of a particular wrong." BLACK'S LAW DICTIONARY 418 (8th ed. 2004). In the parallel state court action, A.G. Cullen Construction, Inc. v. Butler

require a party to request specific damages, however, Rule 8(a)(3) has been read so narrowly as to require only the assertion of the nature of relief alleged. CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 3d, § 1259 (citing *R.S.E., Inc. v. Pennsy Supply, Inc.*, 77 F.R.D. 702, 703 (M.D. Pa. 1977)). Here, the Cullens set forth their damages as additional costs, delay, acceleration, lost profits, loss of bonding capacity and extended overhead. (*See* Docket No. 57 at ¶¶ 22-24, 33, 143, and 178). Additionally, the Cullens claim damages for pecuniary loss due to Butler's alleged contractual breaches. (Docket No. 57 at ¶ 33). In light of the Rules' plain application and the standard imposed on this Court in considering a 12(b)(6) motion, the Court finds that Butler's motion to dismiss the Cullens' breach of contract claim on the basis that it fails to adequately set forth damages is without merit.

### 2. *Count II - Violation of the Pennsylvania Procurement Code*

Next, Butler moves to dismiss the Cullen Defendants' claim under the Procurement Code, 62 Pa C.S. § 101, *et. seq.*, specifically section 3921(a), on the basis that the Cullens have misstated the applicability of the statute and, therefore, the claim fails as a matter of law. (Docket No. 65 at 14-15). The Cullens have asserted that Butler violated section 3921(a) by failing to reduce the Cullens' retainage from 10 % to 5 % when the Cullens reached the 50 % completion point on the Butler Project. (Docket No. 57 at 47, ¶¶ 187- 190). Butler argues that the Cullen Defendants failed to cite the full provision, which in its entirety states:

> A contract may include a provision for the retainage of a portion of the amount due the contractor to insure the proper performance of the contract except that the sum withheld by the

___

County, AD 07-10592, the Honorable Eugene E. Fike, II, in ruling upon Butler' s preliminary objections to the Cullens' damage claims, discussed the rules of pleading as to general damages versus specific. (Docket No. 78-2 at 23-26). He stated that general damages are those while are the ordinary and usual consequence while special damages are those which depend on special circumstances. (*Id*. at 23).

government agency from the contractor shall not exceed 10% of the amount due the contractor until 50% of the contract is completed. When the contract is 50% completed, one-half of the amount retained by the government agency shall be returned to the contractor. However, the architect or engineer must approve the application for payment. The contractor must be making satisfactory progress, and there must be no specific cause for greater withholding. The sum withheld by the government agency from the contractor after the contract is 50% completed shall not exceed 5% of the value of completed work based on monthly progress payment requests. In the event a dispute arises between the government agency and any prime contractor, which dispute is based upon increased costs claimed by one prime contractor occasioned by delays or other actions of another prime contractor, additional retainage in the sum of one and one-half times the amount of any possible liability may be withheld until such time as a final resolution is agreed to by all parties directly or indirectly involved unless the contractor causing the additional claim furnishes a bond satisfactory to the government agency to indemnify the agency against the claim. All money retained by the government agency may be withheld from the contractor until substantial completion of the contract.

62 Pa. C.S. 3921(a). Butler argues that this provision, in its entirety, gave it the legal authority to withhold the money in question from the Cullens. (Docket No. 65 at 15; *Trans.* at 27:19-25, 28:1-25, 29:1-17).

The County's architect and construction manager did not sign off on the reduction request made by the Cullens because they allege that they were aware of nearly two (2) million dollars in claims made by other subcontractors on the Butler Project. (Docket No. 65 at 15). Butler argues that the money it retained was still far below two and one-half times the known value of the claims that were made against it as a result of the Cullens' alleged failure to perform, and, therefore, it did not violate the Procurement Code. (Docket No. 65 at 14-15). In response, the Cullens contend that Butler's arguments in support of dismissal of this claim are misplaced because their arguments amount to a defense to the non-payment. (Docket No. 68 at 12). They argue that this a factual dispute

22

over the retained portions of payments due and what other contractors have done, which Butler argues allowed it to withhold monies. (*Trans.* at 41: 21-25, 42:1-4).

In the Court's estimation, Butler's argument for dismissal of this claim would require the Court to make a factual determination as to whether the Cullens are entitled to the requested relief. However, a factual dispute over whether a plaintiff will ultimately prevail is not properly before a court on a motion to dismiss. *Ferrone v. Onorato*, 439 F.Supp.2d 442, 446 (W.D. Pa. 2006). Accordingly, Butler's arguments as to this claim are not properly before the Court at this time and the motion to dismiss the Cullens' cross-claim for violation of the Procurement Code is denied.

### 3.    Count III - Claim for Tortious Interference with Contract

Defendant Butler County moves to dismiss the Cullens' claim for tortious interference on the basis that the Cullens have failed to plead the required elements of the cause of action. (Docket No. 65 at 16). Under Pennsylvania law, for tortious interference with contract, a claimant must establish:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;
>
>  (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
>
> (3) the absence of privilege or justification on the part of the defendant; and
>
> (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Reading Radio, Inc. v. Fink*, 833 A.2d 199, 211 (Pa. Super. 2003) (citations omitted). Specifically, Butler argues this cause of action fails because the Cullens base their claim solely on the assertion that Butler  provided distorted and inaccurate information to other parties with whom the Cullens "did, do, or might in the future do, some business." (Docket No. 65 at 16). Butler contends that this claim

fails under the third and fourth elements described above. Specifically, Butler argues that it is immune pursuant to the Speech and Debate Clause of the Pennsylvania Constitution, Pa. Const., Art. II, § 15, as well as the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. §§ 8541, *et. seq.* (*Id.* at 18; *Trans.* at 25:18-20). Additionally, Butler contends that this claim fails because any damages alleged by the Cullens are purely speculative; therefore, the Cullens have not pled the required elements for recovery. (*Id.* at 18).

Butler asserts that it is immune from suit for tortious interference with contract pursuant to the PSTCA. (Docket No. 65 at 18; *Arg't. Trans.* at 25:18-20). In response, the Cullens argue that the PSTCA is inapplicable because said Act provides for an action under section 8550 against Butler when the County's actions are willful.[14] (Docket No. 68 at 16; *see also Arg't. Trans.* at 44:20-21).[15]

Local agencies are immune from intentional torts under the PSTCA, 42 Pa. C.S.§ 8541. *Dours*

---

[14] Section 8550 provides:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa. C.S. § 8550.

[15] The Court notes that in the Butler County Court of Common Pleas, the Honorable Judge Eugene E. Fike, II, determined in his August 28, 2008 opinion that Defendant Butler County is immune under the PSTCA for any claims by the Cullens for tortious interference with contract. Butler is now challenging the Cullens' identical claim brought in the instant action, which was dismissed from the state court case. According to the doctrine of res judicata, or claim preclusion, a court must give preclusive effect if there has been a prior final judgment on the merits, the same parties are involved, and the subsequent suit is based on the same cause of action. *Corestates Bank v. Huls America, Inc.*, 176 F.3d 187, 194 (3d Cir 1999). The United States Court of Appeals for the Third Circuit has held that a judgment based on statutory immunity under the PSTCA, entered before development of the merits of a case, i.e. trial, is not based on the merits for the purposes of claim preclusion. *Wade v. City of Pittsburgh*, 765 F.2d 405, 410-11(3d Cir. 1985). Therefore, this Court is not bound by Judge Fike's decision with regard to Butler County's defense of immunity, at this stage.

*v. Mark S. Schweiker, Governor, Commonwealth of Pennsylvania*, 229 F. Supp. 2d 391, 402 (E.D. Pa. 2002). Section 8541 provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof." 42 Pa. C.S.§ 8541. The parties do not dispute that Defendant Butler County is such a local agency as defined in section 8501 of the Act.[16]

Under the statute, tort actions are permitted only in eight enumerated circumstances, which are the only exceptions to sovereign immunity. *See* 42 Pa. C.S. § 8542; and *Simmons v. Twp. of Moon*, 144 Pa. Commw. 198, 205, 601 A.2d 425, 429 (1991). A cause of action sounding in intentional interference with contractual relations is not among these exceptions. *See Five Star Parking v. Philadelphia Parking Authority*, 662 F. Supp. 1053, 1055 (E.D. Pa. 1986); *see also Steiner by Steiner v. City of Pittsburgh*, 97 Pa. Cmwth 440, 509 A.2d 1368 (1986). Thus, the Cullens' claim against Butler is not expressly permitted under the statute and its exceptions.

The Cullens have cited section 8550 of the PSTCA in support of their argument that their claim is permitted under the Act. Sction 8550 abrogates immunity for the willful misconduct of an individual employee. 42 Pa.C.S. § 8550. However, it does not create an exception for municipal defendants under the statute. *See Petula v. Mellody*, 631 A.2d 762, 765 (Pa. Cmwlth. Ct. 1993) (section 8550 does not create an exception to section 8542 for the willful misconduct of an employee). Although the Cullens have described the acts of individual employees (*see* Docket No. 57 at 50, ¶ 218), those persons are not parties to this suit. Even where the alleged conduct of

---

[16]

Under the PSTCA, a local agency is defined as a government unit other than the Commonwealth government. 42 Pa.C.S. § 8501. The definition includes, but is not limited to, municipalities cooperating in the performance of governmental functions, powers or responsibilities. *Id.*

individual employees was willful, the Act does not permit liability to be imposed on a municipality, i.e. Butler. *City of Philadelphia v. Glim*, 613 A.2d 613 (Pa. 1992); *Wakshul v. City of Philadelphia*, 998 F.Supp. 585, 588 (E.D. Pa. 1998); *see also Ferrone v. Onorato*, 439 F.Supp.2d 442 (W.D. Pa. 2006) (holding that immunity for individual county official may be overcome); *Udujih v. City of Philadelphia*, 513 F.Supp.2d 350 (E.D. Pa. 2007) (the PSTCA abrogates immunity for individual employees but this abrogation does not extend to the municipality). As the Court finds that the County is immune against the Cullens' tortious interference claim under the PSTCA, Butler's motion to dismiss the Cullens' cross-claim for tortious interference with contractual relations is granted.[17]

             4.     *Butler's Motion to Dismiss for Lack of Jurisdiction*

Defendant County further argues that this court lacks supplemental jurisdiction over the Cullen Defendants' cross-claims under 28 U.S.C. § 1367(a)[18] and FED. R. CIV. P. 13. (Docket No. 65 at 19; *Trans.* at p. 27, ll. 6-14). Butler argues that the Cullens' claims "are in no way related to Travelers' attempt to collect security." (Docket No. 65 at 19). The Cullens, however, argue that jurisdiction is proper as their claims arise out of the same transactions that are the subject matter of the original action filed by Travelers. (Docket No. 68 at 17; *Trans.* at 32:14-17). Thus, they argue, jurisdiction is proper according to FED. R. CIV. P. 13(g).

A review of the pleadings shows that the Cullens' cross-claims are properly before the Court because they arise from the same set of facts surrounding the suit between Travelers and the Cullens.

---

17

      In the state court action, Judge Fike reached the same conclusion as to the Cullens' tort claim. (Docket No. 78-2 at 30-31).

18

      Section 1367(a) provides that in "any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. 1367(a).

*See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) (pendent jurisdiction is proper where state and federal claims derive from a common nucleus of operative fact).  The Cullens  assert that if they are found liable to Travelers, Butler will be liable to the Cullens due to their breach of contract claims.  (Docket No. 68 at 18).  Thus, there is a logical relationship between the Cullens' claims against Butler and Travelers' suit against the Cullens, as the two cases share many of the same operative facts.  *Xerox Corp. v. SCM Corp.*, 576 F2.d 1057, 1059 (3d Cir. 1978) (citation omitted); *see also Nanavati v. Burdette Tomlin Mem'l. Hosp.*, 857 F.2d 96, 105 (3d Cir. 1988) (holding that "total congruity between operative facts of the two cases is unnecessary").  Because the dispute between the Cullens and Butler surrounds the performance or lack of performance under a construction contract backed by Travelers, the Cullens' claims against Butler should be resolved together with Travelers' claims.  *See* Fed. R. Civ. P. 13; *see also Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961) (when multiple claims involve the same factual and legal issues, in the interest of fairness and economy, they may be considered together).  Accordingly, the Court denies Butler's motion to dismiss the Cullens' cross-claims for lack of jurisdiction.

## VI.      Conclusion

Bases on the foregoing, Defendant County of Butler's Motion to Dismiss [62] the Sixth and Seventh Counts of Plaintiff's Amended Complaint [50] is **DENIED**, and Defendant Butler County's Motion to Dismiss [64] the Cullen Defendants' Cross-Claims [57] is **GRANTED, IN PART,** and **DENIED, IN PART**.  With respect to the Cullens' cross-claim against Defendant County of Butler  for tortious interference with contractual relations as contained in Count III, the motion is **GRANTED**.  With respect to the Cullens' remaining cross-claims for breach of contract

and violation of the Pennsylvania Procurement Code, the motion is **DENIED**.

Defendant County of Butler shall have until November 24, 2008, within which to file a responsive pleading to Plaintiff's Amended Complaint and the Cullen Defendants' remaining cross-claims. An appropriate order follows.

_s/Nora Barry Fischer_
Nora Barry Fischer
United States District Judge

CC/ECF:  All counsel of record.
Date:      November 4, 2008.